**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **GERTRUDE KETRE,** | ) | |
| **Plaintiff**, | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 3:07CV536-MEF** |
| | ) | |
| | ) | |
| **AUBURN AQUATICS SWIM** | ) | |
| **PROGRAM and HOMER KELLY,** | ) | |
| **Defendants**. | ) | |

## MOTION TO COMPEL

Defendant Auburn Aquatics Swim Program ("Auburn Aquatics") moves the Court to enter an order compelling Plaintiff, Gertrude Ketre ("Ketre"), to provide information responsive to Auburn Aquatics' First Set of Interrogatories and Requests for Production.  As grounds for this motion, Auburn Aquatics states as follows:

1.    On October 26, 2007, Auburn Aquatics served the interrogatories and requests for production attached as Exhibit A.  A copy of Ketre's response to the interrogatories is attached as Exhibit B and a copy of Ketre's response to the requests for production is attached as Exhibit C.

### Discovery Issue 1: Ketre's Failure to Provide an Itemized List of Damages

2.    Interrogatories 23 and 28 are directed at ascertaining Ketre's alleged damages in this case — and specifically at ascertaining the medical expenses Ketre claims to have incurred.  Those interrogatories and Ketre's responses thereto read as follows:

> **Interrogatory 23:**  Itemize each and every category of damages that you claim in this action, including in your answer a computation of such damages.

**Response:** I sustained damages associated with the surgery on my hip as well as follow up treatment with respect to my hip. **My attorneys are compiling a total of medical expenses to day [sic]**. To the best of my knowledge, I will require continued follow-up care and rehabilitation for the remainder of my life with respect to my hip. (Please see Response to Interrogatory No. 25 below.) I have been unable to go back to work at Smokerise Baptist Church nor have I been able to supplement my income through babysitting. I have lost income from those jobs. The biggest problem though is what this has done to me physically and emotionally.[1] (emphasis added)

**Interrogatory 28:** List all medical or health care expenses you incurred as a result of the Incident.

**Response:** The medical bills and records associated with my care and treatment arising from the incident will be produced.

3.    On January 10, 2008, the undersigned sent a letter to counsel for Ketre identifying several deficiencies in Ketre's discovery responses.  Among the identified deficiencies was Ketre's failure to provide an itemization of the damages claimed in this lawsuit.  A copy of the January 10, 2008 letter is attached as Exhibit D.

4.    In subsequent discussions regarding outstanding discovery, counsel for Ketre — consistent with the response to interrogatory 23 — indicated that they needed additional time to "compile" the relevant medical records in order to provide an

---

[1] Ketre's response to Interrogatory 25 ("State all physical and/or mental injuries or conditions you claim are a result of the Incident") is as follows:

> Prior to the incident, I was in excellent health. I would walk on a treadmill at a setting of "4.8" for approximately 1 ½ hours per day. I would walk 6-8 miles per day. I would occasionally walk around the base of Stone Mountain Park in Stone Mountain for one and one-half loops, a distance of approximately 7 miles. Since the incident, I have difficulty in moving around, standing or walking. My leg is in constant pain. While I try to remain in good spirits, I often get depressed when I realize how difficult it is for me to walk or do other physical activities which I was able to do prior to the incident and I have to rely upon my family members to help me with many day-to-day tasks. I enjoyed walking with my friends but am unable to walk with them anymore.

(Exhibit B, p. 15)

itemization of Ketre's alleged damages.  The undersigned counsel agreed to allow such additional time in order to avoid filing a motion to compel.

5.    On May 28, 2008, during Ketre's deposition, the following exchange took place between attorneys for Ketre and attorneys for the respective defendants.

> Mr. Hammond [Attorney for Defendant Auburn Aquatics]: Let me ask this question to shortcut this: I assume we can get a list or printout or something of the prescription drugs that she's claiming would be reimbursable in this case?
>
> Mr. Smith [Attorney for Defendant Homer Kelly]: And I would say the same thing.
>
> Mr. Kenney [Attorney for Plaintiff Ketre]: We will - absolutely. We will get that for you, and we will itemize both the medical expenses paid by insurance and those paid out of pocket and separate them.

(*See* pages 325-326 of Gertrude Ketre deposition transcript, attached as Exhibit E).

6.    On June 3, 2008, the undersigned and counsel for Ketre engaged in a discussion regarding additional discovery to be conducted in this case, during which counsel for Ketre stated that an itemization of Ketre's damages would be provided "by the end of June."

7.    On July 11, 2008, and again on July 28, 2008, the undersigned counsel sent letters to counsel for Ketre, following up on the request for an itemized list of the medical expenses claimed as damages in this case.  Those letters are attached collectively as Exhibit F.

8.    By letter dated August 1, 2008, a copy of which is attached as Exhibit G, counsel for Ketre stated as follows:

> We have already provided you all the medical records and the associated bills and invoices with the medical treatment of Ms. Ketre. Furthermore, it is my understanding that you have obtained all of this information directly from the healthcare providers. Obviously, the best

> evidence of these past medical expenses are [sic] the specific medical bills and the detailed description of services provided with respect to such invoices.
>
> Perhaps I do not understand the nature of your request in this matter. Nonetheless, it appears that we have already provided all of the information that you now claim must be produced by August 1, 2008.

(Exhibit G, p. 1)

9.      Contrary to the above assertions, the undersigned has not been provided with documents that provide an itemization or computation of the damages claimed by Ketre in this case.  Moreover, counsel for Ketre has repeatedly stated that the requested information was being "compiled" and that an itemized list of the damages would be forthcoming.  The recent suggestion by plaintiff's counsel that he "does not understand the nature of" the request for an itemized list of medical expenses lacks credibility, given the numerous discussions with the undersigned on this issue — and in fact previously agreeing to provide the requested information by the end of June.

10.      Identification and computation of the damages claimed by a party is a central part of discovery.  Indeed, under FED. R. CIV. P. 26, the information requested by interrogatories 23 and 28 should have been disclosed at the outset of this litigation. Ketre's refusal to provide the requested information, even after being afforded ample opportunity to do so, necessitates Court intervention.

### Discovery Issue 2: Ketre's Failure to Produce a Videotape Responsive to a Request for Production

11.      Auburn Aquatics has also sought production of any photographs or videotapes related to the claims asserted in this case. Request for Production 6 and Ketre's response thereto read as follows:

**Request 6:**  All diaries, notes tape recordings, photographs, videotapes, or other documents made or kept by you concerning this case, your claims, Aquatics Swim Program and/or Auburn University.

**Response:**  A disc containing photographs has already been produced by Plaintiff. To the extent there are any other relevant and responsive documents which are in the care, custody or control of the Plaintiff or Plaintiff's attorneys, will be produced at a mutually convenient time and location. [sic]

12.    During the May 28, 2008 deposition of Ketre's daughter, Heidi Creed, the following exchange took place between Heidi Creed and counsel for defendant Homer Kelly:

> Q.    [By Mr. Smith] That day or at any time, did you take any photographs of that mat?
>
> A.    Yes, I have.
>
> Q.    All right.  You've taken photographs of it.  And when did you take photographs of the mat?
>
> A.    Actually not photographs, but I videotaped it.
>
> Q.    You videotaped it.  When was that?
>
> A.    A few months afterwards.
>
> Q.    Would that have been when you were back in the summertime?
>
> A.    I think so.
>
> Q.    Do you still have that videotape?
>
> A.    No, I don't have it.
>
> Q.    Why did you videotape it?
>
> A.    Because I wanted my lawyer to see that it was — my mother's lawyer to see that it was —

> Q.    Did your mother's lawyer instruct you to take that videotape?
>
> A.    No.
>
> Q.    That's a decision you made on your own?
> A.    Yes, sir.
>
> Q.    And why don't you have that videotape anymore?
>
> A.    Because I gave it to my mother's lawyer.

(*See* pages 176-177 of Heidi Creed deposition transcript, attached as Exhibit H).

13.    The videotape identified in the above exchange is clearly responsive to Request for Production 6.

14.    In the August 1, 2008 letter attached hereto as Exhibit G, counsel for Ketre stated that he did "not believe we have a copy of this video tape but will have our client provide it to us and make a copy available to you as soon as possible." (Exhibit G, p. 2) To date, however, that videotape has not been produced.

15.    Pursuant to FED. R. CIV. P. 37(a)(1), the undersigned counsel has made every effort to resolve these discovery disputes without resorting to court intervention.  Those efforts have not been successful.

WHEREFORE, Auburn Aquatics respectfully requests that the Court enter an Order compelling Ketre to provide supplemental interrogatory responses that include an itemization and computation of past and future medical expenses Ketre claims as damages, and an itemization and computation of any other damages Ketre claims in this action.   Auburn Aquatics further requests the Order compel Ketre to produce any photographs or videotapes responsive to Request for Production 6.

/s/ W. Lee Elebash
Clark R. Hammond (ASB-1550-D44C)
W. Lee Elebash (ASB-8933-L49E)

Attorneys for Defendant Auburn Aquatics
Swim Program

**JOHNSTON BARTON PROCTOR & ROSE LLP**
Colonial Brookwood Center
569 Brookwood Village, Suite 901
Birmingham, Alabama  35209
Telephone:  (205) 458-9400
Facsimile:  (205) 458-9500

**OF COUNSEL**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served the foregoing upon the following parties and/or counsel of record by placing a copy of the same in the United States mail, properly addressed and postage prepaid on this the 25th day of August, 2008:

Robert J. Solomon
Thomas S. Kenney
Lisa H. Baggett
Kenney, Solomon & Medina, P.C.
3675 Crestwood Parkway, Suite 300
Duluth, Georgia 30096

David R. Boyd
John G. Smith
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama 36104-3515

/s/ W. Lee Elebash
Of Counsel

W0655247.DOC

EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **GERTRUDE KETRE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 3:07CV536-MEF** |
| | ) | |
| | ) | |
| **AUBURN AQUATICS, INC., ET AL** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT'S FIRST SET OF INTERROGATORIES AND
## REQUESTS FOR PRODUCTION

Pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, Defendant Auburn Aquatics Swim Program (incorrectly identified in the Complaint as Auburn Aquatics, Inc.) propounds the following interrogatories and requests for production to Plaintiff Gertrude Ketre ("Plaintiff").

## Definitions

For the purposes of these interrogatories and requests for production, and as used herein, the following words shall have, and be construed with reference to, the following meanings and definitions:

1.       "Identify," when used in reference to a natural person, shall mean to state his or her full name and current or last known residence address, current employer, and current business address; when used with respect to an entity, "identify" means to state the legal name and, where applicable, the trade name of the entity, and the current business address of the entity; when used with respect to a document (as hereinafter

defined), "identify" means to state the date, subject or substance, author, and all recipients of the document, the type of document (e.g., letter, telegram, memorandum, computer printout, sound reproduction, chart, etc.), its present location, and the identity of each of its current custodians, and shall include documents with respect to which a privilege is or may be claimed.

2.    "Document" and "documents" shall mean all documents subject to discovery under the Federal Rules of Civil Procedure and shall include, without limitation, every original and non-identical copy of each and every paper, writing (including blind copies), letter, telegram, teletype, telex, telecopy, facsimile transmission, drawing, picture, photograph, negative, slide, movie, film, visual or audio-transcription or record, memorandum, sketch, charter, report, note (including, but not limited to, notes used to prepare any letter, memorandum, report, or other document as herein defined), contract, agreement, change order, form, work sheet, memorandum of telephone conversation or other conversation, witness (including, but not limited to, potential witness) statement, transcript, memorandum pertaining to witness (including, but not limited to, potential witness) interview, sound recording, sound recording transcription, engineering study, cross section, drawing, plan, expert analysis, computer printout, diary, work memorandum, report of investigation and/or inspection, file memorandum, brochure, book, microfilm, tape, videotape, magnetic storage media (including, but not limited to, computer tape, computer hard drive, computer disk, and computer back-up/tape or other storage device), exhibit, attachment, draft, certificate, chart, table, transcript, testimony, transcript of testimony, affidavit, printed or readable material, and any other means of storage and/or transmission of human intelligence.

2

3.      "Relating to" means containing, connected with, pertaining to, discussing, reflecting, referring to, describing, referencing, touching on, supporting, negating, or in any way regarding.

4.      "Any" means any and all.

5.      The words "you," "your," and "yours" shall refer to Plaintiff and all persons, employees, agents, representatives, investigators, attorneys, or consultants acting on her behalf.

6.      "Plaintiff" shall mean Gertrude Ketre.

7.      "Auburn University" shall refer to Auburn University and any affiliates thereof, including but not limited to the Auburn University Athletic Department.

8.      The terms "Fact" or "Facts" shall include, but are not limited to, events, transactions, or occurrences, persons participating in such events, transactions or occurrences, the location of such events, transactions or occurrences, all of which relate to, concern, or are concerned with, in any way whatsoever, directly or indirectly, the interrogatory subject.

9.      "Incident" is defined as the accident or other event that is the subject of your Complaint

10.     Where appropriate, use of the singular includes the plural, and vice versa.

The following interrogatories and requests for production are continuing in nature until the day of the trial. You are required to serve supplemental answers to these interrogatories and requests for production in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

3

**Instructions for Electronically Stored Information**

These requests should be understood to include a request for all information contained or stored in an electronic medium or format, including but not limited to e-mail, word processing documents, spreadsheets, presentation documents, graphics, animations, images, audio, video and audiovisual recordings, and voicemail. To the extent such information or data exists, it should be produced in its native (original) format and should include all metadata associated with the responsive data.

## Interrogatories

1.      State every name, in full, by which you have been known since your birth, the date and place of your birth, your present address, employer and each social security number you have used.

2.      With respect to each employment you have ever held, including self-employment, provide:

      (a)      the legal name and, where applicable, the trade name of your employer;

      (b)      the principal place of business of your employer;

      (c)      your title and duties with respect to each such position held;

      (d)      the dates you held each position identified in subsection (c);

      (e)      the name of your immediate supervisor with respect to each position held;

      (f)      a description of all compensation received; and

      (g)      the reason why you left each such position.

3.      Describe your education, including but not limited to identification of all schools attended, on the job training received, degrees or certifications received and any

4

other course of instruction for any reason.  To the extent applicable, identify attendance and completion dates.

4.      Have you ever been arrested for, or convicted of, a crime? If so, when, where, what was the charge and how was the matter resolved?

5.      Have you ever been a party or witness in any other litigation? If so, in what court and how was the matter resolved?

6.      Have you ever declared bankruptcy?  If so, what chapter and in what court? Has the bankruptcy been discharged?

7.      Identify all of your family members attending or participating in the swim meet referenced in Paragraph 8 of your Complaint.

8.      Identify all persons with whom you traveled to attend the swim meet referenced in Paragraph 8 of your Complaint.

9.      Identify each person who you believe has or may have knowledge of the facts that form the basis of the allegations contained in paragraph 11 of your Complaint, including in your answer a description of the substance of each such person's knowledge about those facts.

10.      Identify each person who you believe has or may have knowledge of the facts that form the basis of the allegations contained in paragraph 12 of your Complaint, including in your answer a description of the substance of each such person's knowledge about those facts.

11.      Identify each person who you believe has or may have knowledge of the facts that form the basis of the allegations contained in paragraph 14 of your Complaint,

including in your answer a description of the substance of each such person's knowledge about those facts.

12.      Identify each person who you believe has or may have knowledge of the facts that form the basis of the allegations contained in paragraph 15 of your Complaint, including in your answer a description of the substance of each such person's knowledge about those facts.

13.      With respect to your contention in Paragraph 9 of your Complaint that you were "directed to proceed to stairs located by the warm up pool":

    (a)      state with particularity the factual basis for such contention;

    (b)      identify each communication upon which such contention is in any way based, and state in detail the substance of each such communication;

    (c)      identify each person whom you contend has knowledge of any of the facts upon which such contention is in any way based;

    (d)      identify each person who has knowledge of any facts contrary to such contention; and

    (e)      identify each document that, in whole or in part, supports, refutes, or otherwise relates to such contention.

14.      With respect to your contention in Paragraph 14 of your Complaint that defendants negligently, recklessly, wantonly and/or willfully placed, cut located, or failed to properly secure a deck mat on the route to spectator seating:

    (a)      state with particularity the factual basis for such contention;

    (b)      identify each communication upon which such contention is in any way based, and state in detail the substance of each such communication;

    (c)      identify each person whom you contend has knowledge of any of the facts upon which such contention is in any way based;

    (d)      identify each person who has knowledge of any facts contrary to such contention; and

(e)    identify each document that, in whole or in part, supports, refutes, or otherwise relates to such contention.

15.    Describe in your own words, in full detail, how the Incident occurred, including the events in the five (5) minutes leading up to the Incident.

16.    Indicate whether you contend you fell as a result of:

(a) Slipperiness of the floor and/or walking surface and/or stair(s), and if so, due to what substance?

(b) Defects in the floor and/or walking surface and/or stair(s), and if so, due to what kind of defects?

(c) Debris, litter, and/or obstructions on the floor and/or walking surface and/or stair(s), and if so, due to what kind of debris, litter and/or obstructions?

(d) Variations in the floor and/or walking surface and/or stair(s); and if so due to what kind of variations?

(e) Inadequate lighting in the area, and if so, describe the lighting that was present and why you contend it was inadequate?

(f) Other defects or issues that you contend caused or contributed to your fall (specify).

17.    Did you use the handrail as you proceeded up the stairs at the James E. Martin Aquatics Center?

18.    Identify and describe with specificity all items or things that you were holding or carrying when you entered the James E. Martin Aquatics Center and/or at the time of the Incident.

19.    Describe the footwear you were wearing at the time of the Incident. Include in your response the following information:

(a) The type and brand name of the footwear;

(b) Where and when you purchased the footwear;

7

(c) The material of the sole and the type and height of the heel;

(d) The identity of the present custodian, if any, of the footwear.

20.      If you have knowledge of any photographs, sketches, or drawings of the area where you fell, please state by whom they were made and who requested them, and who has present custody of such documents.

21.      Identify and describe with specificity every contact and communication between you and Auburn Aquatics Swim Program or any person or entity acting on its behalf at any time up to and including the present.

22.      Identify and describe with specificity every contact and communication between you and Auburn University or any person or entity acting on its behalf at any time up to and including the present.

23.      Itemize each and every category of damages that you claim in this action, including in your answer a computation of such damages.

24.      Identify all documents on which your computation of damages is based.

25.      State all physical and/or mental injuries or conditions you claim are a result of the Incident.

26.      State all physical and/or mental injuries or conditions you suffered from during the ten years before the Incident.

27.      State all physical and/or mental injuries or conditions you have incurred since the date of the Incident that you claim (a) aggravated your injuries or conditions, or (b) were new injuries or conditions.

28.      List all medical or health care expenses you incurred as a result of the Incident.

29.　　Identify all physicians, psychiatrists, psychologists, counselors, ministers or other healthcare providers from which you sought or received treatment since January 1, 1997.

30.　　Identify all medications that you have been prescribed from January 1, 1997 to the present including the name of the physician or other healthcare provider who prescribed the medication.

31.　　If applicable, identify each insurance carrier providing medical or other health care benefits or which might provide medical or other health care benefits to you.

32.　　If you have ever been treated as an inpatient in a hospital or received any treatment on an outpatient basis from January 1, 1997 to the present, please state the dates of each such treatment and identify the physician(s), psychiatrist(s), psychologist(s) or other healthcare provider who treated you.

33.　　Have you ever applied for disability benefits of any type, including through the Social Security Administration or a private insurance carrier? If so, state the date of the application and the entity from which the benefits were sought.

## REQUESTS FOR PRODUCTION

1.　　All documents that you identified in your answers to the preceding interrogatories.

2.　　All documents evidencing any communications between you and Auburn Aquatics Swim Program or any person or entity acting on its behalf at any time up to and including the present.

3.　　All documents evidencing any communications between you and Auburn University or any person or entity acting on its behalf at any time up to and including the

present.

4.      All documents evidencing any communication between you and any family member relating to the allegations contained in your Complaint.

5.      All documents evidencing any communications between you and any witness to the events that are the subject of your Complaint.

6.      All diaries, notes, tape recordings, photographs, videotapes or other documents made or kept by you concerning this case, your claims, Auburn Aquatics Swim Program and/or Auburn University.

7.      All documents reflecting the identity of any doctor, therapist, chiropractor, psychiatrist, psychologist, minister or other counselor that you made an appointment with, consulted or received treatment from at any time from January 1, 1997 to the present.

8.      All medical, psychiatric or psychological reports, writings, histories and charts, x-ray reports, prescriptions, bills and any other records or documents pertaining or referring in any way to any diagnosis, observation or treatment of you from January 1, 1997 to the present.

9.      All items or things that you were carrying or holding when you entered the James E. Martin Aquatics Center and/or at the time of the Incident.

Clark R. Hammond (ASB-1550-D44C)
W. Lee Elebash (ASB-8933-L49E)
Attorneys for Defendant Auburn Aquatics

**JOHNSTON BARTON PROCTOR & ROSE LLP**
Colonial Brookwood Center
569 Brookwood Village, Suite 901
Birmingham, Alabama  35209
Telephone:  (205) 458-9400
Facsimile:   (205) 458-9500

**OF COUNSEL**

## CERTIFICATE OF SERVICE

I hereby certify that on the $\underline{26^{th}}$ day of October, 2007, a copy of the foregoing was served by placing a copy of the same in the U.S. Mail, properly addressed and first-class postage prepaid to the following:

Robert J. Solomon
Kenney, Solomon & Medina, P.C.
Duluth, Georgia 30096
(770) 564-1600

_____
Counsel

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

GERTRUDE KETRE,  )
　　　　　　　　　　 )
　　　　Plaintiff,  )
　　　　　　　　　　 )
　　　　　　　　　　 )
v.　　　　　　　　 )　　　CASE NO. 3:07CV536-MEF
　　　　　　　　　　 )
　　　　　　　　　　 )
AUBURN AQUATICS, INC., et al.  )
　　　　　　　　　　 )
　　　　Defendants.  )

## PLAINTIFF'S RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES

COMES NOW, GERTRUDE KETRE (hereinafter "Plaintiff"), Plaintiff in the above-styled action, and responds to Defendant's Interrogatories to Plaintiff. The identification or production of any document or the supplying of any information does not constitute an admission by Plaintiff that such document or information is relevant to the pending litigation or admissible at the time of trial. Without waiving its objections, Plaintiff responds as follows:

### GENERAL OBJECTIONS

A.

Plaintiff objects to the Defendant's Interrogatories to the extent said request would require Plaintiff to respond by disclosing her attorneys' mental impressions, conclusions, opinions, computations, calculations, projections, reasons, legal theories, work product, or the like, on the ground that said request exceeds the permissible scope of discovery under the Federal Rules of Civil Procedure.

B.

Plaintiff objects to the Defendant's Interrogatories to the extent that said request is calculated, or would operate to annoy, embarrass, oppress or cause undue expense to Plaintiff, or would be unduly vexatious or unduly burdensome to respond to, on the ground that said request exceeds the permissible scope of discovery under the Federal Rules of Civil Procedure.

C.

Plaintiff objects to the Defendant's Interrogatories to the extent that said request requires Plaintiff to respond by acquiring or supplying documents which would be irrelevant to the subject matter or issues of this action, and not reasonably calculated to lead to the discovery of admissible evidence, on the ground that said request exceeds the permissible scope of discovery under the Federal Rules of Civil Procedure.

D.

Plaintiff objects to the Defendant's Interrogatories to the extent that said request requires Plaintiff to respond by waiving its attorney/client privilege, on the ground that said request exceeds the permissible scope of discovery under the Federal Rules of Civil Procedure.

E.

Plaintiff objects to the Defendant's Interrogatories To Plaintiff to the extent that Defendant imposes or attempts to impose a duty of supplementation outside the scope of Rule 26 of the Federal Rules of Civil Procedure. This Plaintiff assumes no continuing duty of supplementation beyond that imposed by Rule 26 and declines to make any agreement with Defendant concerning any additional duty to supplement Interrogatory Responses beyond what is required by the Federal Rules of Civil Procedure.

F.

Plaintiff also reserves all objections to the competency, relevancy, materiality or admissibility at trial of any documents that may be produced. The identification or production of any document or the supplying of any information does not constitute an admission by Plaintiff that such document or information is relevant to the pending litigation or admissible at the time of trial.

G.

Subject to and without waiving the foregoing general objections, which all individually numbered Responses are subject to, Plaintiff responds and objects to the Defendant's Interrogatories to Plaintiff, as follows:

## SPECIFIC RESPONSES AND OBJECTIONS

### Interrogatories

Interrogatory No. 1

State every name, in full, by which you have been known since your birth, the date and place of your birth, your present address, employer and each social security number you have used.

**Response No. 1:**

*I was born in Aachen, Germany on June 5, 1924. My given name is Gertrude Schultheis. I lived with foster parents as a child and was briefly known as Gertrude Setzen. From approximately 1946 to 1948, I was known as Gertrude Palmer. From 1955 until the present, I have been known as Gertrude Ketre.*

*I am not currently employed.*

*The Plaintiff objects to the furnishing of her social security number in written response*

*to this Interrogatory.*

<u>Interrogatory No. 2</u>

With respect to each employment you have ever had, including self-employment, provide:

(a)     the legal name and, where applicable, the trade name of your employer;
(b)     the principal place of business of your employer;
(c)     your title and duties with respect to each such position held;
(d)     the dates you held each position identified in subsection (c);
(e)     the name of your immediate supervisor with respect to each position held;
(f)     a description of all compensation received; and
(g)     the reason why you left each such position.

**<u>Response No. 2:</u>**

*The Plaintiff objects to the information requested in Interrogatory No. 2 in that such*

*information is not reasonably calculated to lead to the discovery of admissible evidence, is not*

*relevant and exceeds the scope of discovery. Subject to and without waiving said objection, the*

*Plaintiff provides the information which is available or which she recollects to the best of her*

*knowledge:*

*a.     From approximately 1944 until 1945, I was employed by American/British*

*Intelligence throughout Europe and Russia during World War II. Following World War II, I*

*I was asked to move to the United States by American Intelligence and worked part-time as a*

*model from approximately 1949 until approximately 1960 in the State of Connecticut. Also*

*during the same approximate period of time, I worked as an inspector for AC Gilbert*

*Company in Connecticut. It is my recollection that AC Gilbert would make components for*

*ferris wheels. I do not recollect any information regarding my supervisors, amount of*

*compensation or the other information requested in this Interrogatory.*

- 4 -

*I ceased working outside the home upon the birth of my daughter Heidi in 1960. In 1982, my husband, Walter Ketre passed away and I began working at the Masonic Hospital in New Haven, Connecticut. While working part-time at the hospital making hospital beds, I also went to Nursing School at Masonic Hospital and became a Nursing Assistant. I worked at Masonic Hospital until moving to Georgia in 1990.*

*Upon moving to Georgia, I began working at the Smokerise Baptist Church in Stone Mountain, Georgia in the nursery program. I was paid an hourly wage, but cannot recall the amount of money paid to me. My immediate supervisor was Dr. Browning. I left full-time employment of SmokeRise Baptist Church on or about December, 2005 when I moved from Lilburn, Georgia to Braselton, Georgia to live closer to my daughter, son-in-law and grandchildren. I continued working at Smokerise Baptist Church on Sunday mornings from approximately 8:00 a.m. until 1:00 p.m. until I fell at the swim meet in February, 2006.*

<u>Interrogatory No. 3</u>

Describe your education, including but not limited to identification of all schools attended, on the job training received, degrees or certifications received and any other course of instruction for any reason. To the extent applicable, identify attendance and completion dates.

**<u>Response No. 3:</u>**

*The Plaintiff objects to the information requested in Interrogatory No. 3 in that such information is not reasonably calculated to lead to the discovery of admissible evidence, is not relevant and exceeds the scope of discovery. Subject to and without waiving said objection, the Plaintiff provides the information which is available or which she recollects to the best of her knowledge:*

*I attended primary school in Bardenberg, Germany for 8 years. This education is equivalent to elementary and high school in the United States. Upon completion of this*

- 5 -

*schooling, I attended college at the University in Cologne in Germany for approximately 1 ½*

*years. I also attended an opera house in Aachen, Germany for approximately 1 to 2 months*

*until World War II broke out.*

*As set forth in the Response to Interrogatory No. 2, I also attended Nursing School at*

*the Masonic Hospital in New Haven, Connecticut in the early 1980's.*

### Interrogatory No. 4

Have you ever been arrested for, or convicted of, a crime? If so, when, where, what was the charge and how was the matter resolved?

**Response No. 4:**

*Not that I recall.*

### Interrogatory No. 5

Have you ever been a party or witness in any other litigation? If so, in what court and how was the matter resolved?

**Response No. 5:**

*Not that I recall, although I was divorced in Connecticut on or about 1948.*

### Interrogatory No. 6

Have you ever declared bankruptcy? If so, what chapter and in what court? Has the bankruptcy been discharged?

**Response No. 6:**

*No.*

### Interrogatory No. 7

Identify all of your family members attending or participating in the swim meet referenced in Paragraph 8 of your Complaint.

**Response No. 7:**

*I traveled to Auburn with my daughter and son-in-law, Rick and Heidi Creed, along with their daughters, Mailene Creed and Sommers Creed (my granddaughters). My granddaughters were both participating in the swim meet.*

### Interrogatory No. 8

Identify all persons with whom you traveled to attend the swim meet referenced in Paragraph 8 of your Complaint.

**Response No. 8:**

*Please see the Response to Interrogatory No. 7.*

### Interrogatory No. 9

Identify each person who you believe has or may have knowledge of the facts that form the basis of the allegations contained in paragraph 11 of your Complaint, including in your answer a description of the substance of each person's knowledge about those facts.

**Response No. 9:**

*Gertrude Ketre; Heidi and Rick Creed; Lifeguard at the aquatic center; Jeff Dellinger; Mary Ronyane; Barbara Prince; Chris O'Gwynn; individuals who assisted me after I fell, whose names are not yet known. All of these individuals may have knowledge of the Incident referred to in my Complaint.*

### Interrogatory No. 10

Identify each person who you believe has or may have knowledge of the facts that form the basis of the allegations contained in paragraph 12 of your Complaint, including in your answer a description of the substance of each person's knowledge about those facts.

**Response No. 10:**

*Please see response to Interrogatory Number 9.*

Interrogatory No. 11

Identify each person who you believe has or may have knowledge of the facts that form the basis of the allegations contained in paragraph 14 of your Complaint, including in your answer a description of the substance of each person's knowledge about those facts.

**Response No. 11:**

*Please see response to Interrogatory Number 9.*

Interrogatory No. 12

Identify each person who you believe has or may have knowledge of the facts that form the basis of the allegations contained in paragraph 15 of your Complaint, including in your answer a description of the substance of each such person's knowledge about those facts.

**Response No. 12:**

*Please see response to Interrogatory Number 9 and 14.  Additionally, yet unidentified employees or agents of Auburn University and Auburn Aquatics may have knowledge of the facts that form the allegations contained in Paragraph 15 of my Complaint.*

Interrogatory No. 13

With respect to your contention in Paragraph 9 of your Complaint that you were "directed to proceed to stairs located by the warm up pool":

    (a)    state with particularity the factual basis for such contention;

    (b)    identify each communication upon which such contention is in any way based, and state in detail the substance of each communication;

    (c)    identify each person whom you contend has knowledge of any of the facts upon which such contention is in any way based;

    (d)    identify each person who has knowledge of any facts contrary to such contention; and

    (e)    Identify each document that, in whole or in part, supports, refutes, or otherwise relates to such contention.

**Response No. 13:**

*Upon arriving at the James E. Martin Aquatic Center, I entered through the open door on the pool deck level. I had previously been to a swim meet at the Aquatic Center and knew that the heat sheets and swim programs were available on the upper deck. Based upon my previous visit to the Aquatic Center, the only way to access the upper deck that I was made aware of was up the stairs I was traveling at the time of my fall. I was heading up the stairs when my foot was caught in the deck mat and I fell. I was never asked, notified, requested, nor instructed to use any other means of reaching the second level. Now, spectators, parents, etc... are not allowed to use those stairs by safety officials, who were not present at the meet at which I fell.*

<u>Interrogatory No. 14</u>

With respect to your contention in Paragraph 14 of your Complaint that defendants negligently, recklessly, wantonly and/or willfully placed, cut located, or failed to properly secure a deck mat on the route to spectator seating:

    (a)    state with particularity the factual basis for such contention;

    (b)    identify each communication upon which such contention is in any way based, and state in detail the substance of each such communication;

    (c)    identify each person whom you contend has knowledge of any of the facts upon which such contention is in any way based;

    (d)    identify each person who has knowledge of any facts contrary to such contention; and

    (e)    Identify each document that, in whole or in part, supports, refutes, or otherwise relates to such contention.

**Response No. 14:**

(a) – (b)        *The Defendants use the facility on a daily basis. The Defendants placed and/or allowed the mat to remain in this location. The mat was not secured in any manner to the floor or wall. It was movable and in fact did move as pedestrian traffic moved across the mat. The mat was improperly sized for this location. The stairs and the landing space which the mat was placed was frequently used by spectators, swimmers, parents, etc… throughout swim meets. The Defendants invited us to the meet. The Defendants sold the heat sheet/program which I was attempting to purchase on the upstairs level of the building.*

*As I was climbing the stairs up to the spectator deck, my foot got caught. My foot had gotten stuck underneath in a space between the deck mat and the landing where the deck mat had rolled up a bit. As I moved forward, I tried to lift my foot but it stuck under the deck mat. There were no hand rails for me to grab on to and I twisted and fell at the same time.*
*I do not yet have the identity of any persons who placed, cut or attempted to improperly secure the deck mat to the stairs.*

   (c)        *Unidentified spectators who, after I fell, reported problems with the mat, meet officials, Auburn Aquatic coaches/agents or employees; my daughter and son-in-law;*

   (d)        *Safety marshal//Inspector for the meet;*

   (e)        *Meet Itinerary  Information and USA Swimming Rules and  Safety instructions;*

   *This Interrogatory will be supplemented as discovery continues.*

Interrogatory No. 15

Describe in your own words, in full detail, how the Incident occurred, including the events in the five (5) minutes leading up to the Incident.

**Response No. 15:**

*My son-in-law (Rick Creed) drove up to the Aquatic Center and I entered on the pool deck level. I wanted to purchase a program and obtain a heat sheet prior to the meet. I had been to the Aquatic Center for swim meets on previous occasions and I went toward the stairs up to the spectator seating. There were also bathrooms on the spectator seating level and I was going to use the bathroom, buy the swim program and obtain a heat sheet prior to the meet.*

*I began to climb the stairs and as I was climbing the stairs, my foot became caught in the deck mat. As I looked down, I could see my foot was caught in a space between the deck mat and the stair. I tried to free my foot from its position under the deck mat, but could not free it as I began to lose my balance and fell. As a result of the pain in my leg from the fall, I became somewhat dazed and remember people coming over to help me, but do not recollect the names of these people or exactly what they may have told me.*

Interrogatory No. 16

Indicate whether you contend you fell as a result of:

(a)     Slipperiness of the floor and/or walking surface and/or stair(s), and if so, due to what substance?

(b)     Defects in the floor and/or walking surface and/or stair(s), and if so, due to what kind of defects?

(c)     Debris, litter, and/or obstructions of the floor and/or walking surface and/or stair(s), and if so, due to what kind of debris, litter and/or obstructions?

(d)     Variations in the floor and/or walking surface and/or stair(s); and if so due to what kind of variations?

(e)     Inadequate lighting in the area, and if so, describe the lighting that was present and why you contend it was inadequate?

(f)     Other defects or issues that you contend caused or contributed to your fall (specify).

**Response No. 16:**

*Plaintiff objects to this Interrogatory to the extent that such Interrogatory is vague and does not define many of the terms set forth in the Interrogatory. Additionally, Plaintiff objects to the Defendant's Interrogatory on the ground that said Interrogatory seeks materials prepared in anticipation of litigation without the required showing of need for said materials. Subject to and without waiving said objections, it is my contention that I fell because the deck mat was placed in such a way that it allowed my foot to get stuck between it and the stair. As I climbed the stairs, my foot apparently was caught under the portion of the deck mat hanging over the edge of the stair, causing my foot to become wedged under the deck mat, which caused my fall. The mat was improperly installed. The mat was not secured to the floor and was subject to sliding and/or moving. The hand rail does not provide any assistance at that location on the stairs.*

Interrogatory No. 17

Did you use the handrail as you proceeded up the stairs at the James E. Martin Aquatics Center?

**Response No. 17:**

*Yes. There is no hand rail on the portion of the stairs where I fell and no hand rail on the opposite side until you reach the second set of stairs.*

Interrogatory No. 18

Identify and describe with specificity all items or things that you were holding or carrying when you entered the James E. Martin Aquatics Center and/or at the time of the Incident.

**Response No. 18:**

*I believe I had my purse, which has a shoulder strap and was placed on my shoulder. I was not carrying any items or holding any items as I entered the Aquatic Center, nor was I carrying any items or holding any items in my hands at the time of the incident.*

Interrogatory No. 19

Describe the footwear you were wearing at the time of the Incident. Include in your response the following information:

(a)     The type and brand name of your footwear;

(b)     Where and when you purchased the footwear;

(c)     The material of the sole and the type and height of the heel;

(d)     The identity of the present custodian, if any, of the footwear.

**Response No. 19:**

*I generally always wear Reebok tennis shoes, and was wearing Reebok tennis shoes at the time of the incident. I have a number of pairs of Reebok tennis shoes and cannot specifically identify which pair I was wearing on the date of the incident. I generally purchase my Reebok tennis shoes at JC Penney, but I am not sure that the shoes I purchased on the day of the incident were purchased at JC Penney.*

Interrogatory No. 20

If you have knowledge of any photographs, sketches, or drawings of the area where you fell, please state by whom they were made and who requested them, and who has present custody of such documents.

- 13 -

**Response No. 20:**

*My attorneys had photograph taken of the area where I fell and those pictures are in*

*the custody of my attorneys.*

<u>Interrogatory No. 21</u>

Identify and describe with specificity every contact and communication between you and Auburn Aquatics Swim Program or any person or entity acting on its behalf at any time up to and including the present.

**Response No. 21:**

*As set forth in Interrogatory No. 15, many people came to my aid after I fell and spoke*

*with me. I do not know if any of these individuals were associated with Auburn Aquatics.*

<u>Interrogatory No. 22</u>

Identify and describe with specificity every contact and communication between you and Auburn University or any person or entity acting on its behalf at any time up to and including the present.

**Response No. 22:**

*As set forth in Interrogatory No. 15, many people came to my aid after I fell and spoke*

*with me. I do not know if any of these individuals were associated with Auburn University.*

*Once I came home from the hospital, I received several phone calls from a representative of*

*Auburn University, who turned out to be an insurance adjuster.*

<u>Interrogatory No. 23</u>

Itemize each and every category of damages that you claim in this action, including in your answer a computation of such damages.

**Response No. 23:**

*I sustained damages associated with the surgery on my hip as well as follow-up*

*treatment with respect to my hip. My attorneys are compiling a total of medical expenses to*

*day.*

*To the best of my knowledge, I will require continued follow-up care and rehabilitation for the remainder of my life with respect to my hip. (Please see Response to Interrogatory No. 25 below.) I have been unable to go back to work at Smokerise Baptist Church nor have I been able to supplement my income through babysitting. I have lost income from those jobs. The biggest problem though is what this has done to me physically and emotionally.*

<u>Interrogatory No. 24</u>

Identify all documents on which your computation of damages is based.

**<u>Response No. 24:</u>**

*I rely on medical bills and medical records associated with the treatment of my injury sustained in the incident.*

<u>Interrogatory No. 25</u>

State all physical and/or mental injuries or conditions you claim are a result of the Incident.

**<u>Response No. 25:</u>**

*Prior to the incident, I was in excellent health. I would walk on a treadmill at a setting of "4.8" for approximately 1 ½ hours per day. I would walk 6-8 miles per day. I would occasionally walk around the base of Stone Mountain Park in Stone Mountain for one and one-half loops, a distance of approximately 7 miles. Since the incident, I have difficulty in moving around, standing up or walking. My leg is in constant pain. While I try to remain in good spirits, I often get depressed when I realize how difficult it is for me to walk or do other physical activities which I was able to do prior to the incident and I have to rely upon family members to help me with many day-to-day tasks. I enjoyed walking with my friends but am now unable to walk with them anymore.*

- 15 -

<u>Interrogatory No. 26</u>

State all physical and/or mental injuries or conditions you suffered from during the ten years before the Incident.

**Response No. 26:**

*I was in very good health prior to this Incident. I was diagnosed with mitral valve prolapse a few years before this Incident, but was not required to have any medication or other treatment with respect to this condition.*

*In 2001 or 2002, I had knee replacement surgery. I was out of work for approximately four (4) weeks after this surgery, but fully recovered and returned to work thereafter.*

<u>Interrogatory No. 27</u>

State all physical and/or mental injuries or conditions you have incurred since the date of the Incident that you claim (a) aggravated your injuries or conditions, or (b) were new injuries or conditions.

**Response No. 27:**

*Other than the injuries suffered as a result of this Incident, on or about January 2007, I was diagnosed with bladder cancer. I underwent successful surgery and the cancerous bladder was removed. I have not suffered any other affects from the cancer.*

*In late 2006, I underwent cataract surgery.*

<u>Interrogatory No. 28</u>

List all medical or health care expenses you incurred as a result of the Incident.

**Response No. 28:**

*The medical bills and records associated with my care and treatment arising from the incident will be produced.*

- 16 -

<u>Interrogatory No. 29</u>

Identify all physicians, psychiatrists, psychologists, counselors, ministers or other healthcare providers from which you sought or received treatment since January 1, 1997.

**Response No. 29:**

*Plaintiff objects to Defendant's Interrogatory Number 29 on the ground that said Interrogatory is overbroad, vague and would be unduly vexatious or unduly burdensome to respond to and is not sufficiently narrow in scope to address the issues relevant in this matter. Further, said Interrogatory would require Plaintiff to respond by acquiring or supplying information which would be irrelevant to the subject matter or issues of this action, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objections, Plaintiff provides the following information to the best of her recollection: Prior to the incident, my regular physician was Dr. Garland, located in Demorest, Georgia. I went to Dr. Garland for regular health check-ups.*

*Subsequent to the incident, I have been treated by a number of doctors, including Dr. John Bohem, Dr. Jackson, Dr. Robb and Dr. Jones. Please refer to my medical records.*

<u>Interrogatory No. 30</u>

Identify all medications that you have been prescribed from January 1, 1997 to the present including the name of the physician or other healthcare provider who prescribed the medication.

**Response No. 30:**

*Plaintiff objects to Defendant's Interrogatory Number 30 on the ground that said Interrogatory is overbroad, vague and would be unduly vexatious or unduly burdensome to respond to and is not sufficiently narrow in scope to address the issues relevant in this matter. Further, said Interrogatory would require Plaintiff to respond by acquiring or supplying information which would be irrelevant to the subject matter or issues of this action, and not*

- 17 -

*reasonably calculated to lead to the discovery of admissible evidence. Subject to and without*

*waiving said objections, Plaintiff provides the following information to the best of her*

*recollection: I do not recollect being prescribed any specific medications. Please refer to my*

*medical records for information on prescribed medications.*

Interrogatory No. 31

If applicable, identify each insurance carrier providing medical or other health care benefits or which might provide medical or other health care benefits to you.

**Response No. 31:**

*Medicare provided health insurance coverage with respect to this incident.*

Interrogatory No. 32

If you have ever been treated as an inpatient in a hospital or received any treatment on an outpatient basis from January 1, 1997 to the present, please state the dates of each such treatment and identify the physician(s), psychiatrist(s), psychologist(s) or other healthcare provider who treated you.

**Response No. 32:**

*Plaintiff objects to Defendant's Interrogatory Number 32 on the ground that said*

*Interrogatory is overbroad, vague and would be unduly vexatious or unduly burdensome to*

*respond to and is not sufficiently narrow in scope to address the issues relevant in this matter.*

*Further, said Interrogatory would require Plaintiff to respond by acquiring or supplying*

*information which would be irrelevant to the subject matter or issues of this action, and not*

*reasonably calculated to lead to the discovery of admissible evidence. Subject to and without*

*waiving said objections, please see the Responses to Interrogatories No. 27 and 29.*

Interrogatory No. 33

Have you ever applied for disability benefits of any type, including through the Social Security Administration or a private insurance carrier?  If so, state the date of the application and the entity from which the benefits were sought.

**Response No. 33:**

*Not that I recall at this time.*

RESPECTFULLY SUBMITTED this _____ day of November, 2007.

_____
ROBERT J. SOLOMON (ASB-9516-M51R)
Attorneys for Plaintiff

For the Firm of
KENNEY, SOLOMON,  & MEDINA, P.C.
3675 Crestwood Parkway, Suite 500
Duluth, Georgia 30096
(770) 564-1600

- 19 -

STATE OF GEORGIA
COUNTY OF GWINNETT

## **VERIFICATION**

PERSONALLY appeared before the undersigned attesting officer, duly authorized by law to

administer oaths, the below-named individual, who, after being first duly sworn, deposes and states

that the facts contained in the within and foregoing Plaintiff's Responses to Defendant's First Set of

Interrogatories and Plaintiff's Responses to Defendant's Request for Production are true and correct

to the best of my knowledge.

The information contained in these Responses may also include information obtained by and

through my attorneys. Assistance may have also been provided by my attorneys in the wording of

the responses.

This _____ day of _____, 2007

_____
GERTRUDE KETRE

Sworn and subscribed to before me
this ___ day of _____, 2007.

_____
Notary Public



# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

GERTRUDE KETRE,                          )
                                         )
        Plaintiff,                       )
                                         )
                                         )
v.                                       )        CASE NO. 3:07CV536-MEF
                                         )
                                         )
AUBURN AQUATICS, INC., et al.            )
                                         )
        Defendants.                      )


## PLAINTIFF'S RESPONSE TO DEFENDANT'S REQUEST FOR PRODUCTION

COMES NOW, GERTRUDE KETRE (hereinafter "Plaintiff"), Plaintiff in the above-styled action, and responds to Defendant's Request for Production of Documents and Notice to Produce to Plaintiff. Plaintiff reserves all objections to the competency, relevancy, materiality or admissibility at trial or other use of any documents produced. The identification or production of any document or the supplying of any information does not constitute an admission by Plaintiff that such document or information is relevant to the pending litigation or admissible at the time of trial.

### General Objections and Qualifications

A.

Plaintiff objects to the Defendant's Request for Production of Documents to Plaintiff and to the extent said discovery would require Plaintiff to respond by disclosing her attorneys' or any other of her representatives' mental impressions, conclusions, opinions, computations, calculations, projections, reasons, legal theories, work product, or the like, on the ground that

said discovery exceeds the permissible scope of discovery under the Federal Rules of Civil Procedure.

B.

Plaintiff objects to the Defendant's Request for Production of Documents to Plaintiff and to the extent that said discovery is calculated, or would operate to annoy, embarrass, oppress or cause undue expense to Plaintiff, or would be unduly vexatious or unduly burdensome to respond to, on the ground that said discovery exceeds the permissible scope of discovery under the Federal Rules of Civil Procedure.

C.

Plaintiff objects to the Defendant's Request for Production to Plaintiff to the extent that said discovery requires Plaintiff to respond by acquiring or supplying documents which would be irrelevant to the subject matter or issues of this action, and not reasonably calculated to lead to the discovery of admissible evidence, on the ground that said discovery exceeds the permissible scope of discovery under the Federal Rules of Civil Procedure.

D.

Plaintiff objects to the Defendant's Request for Production of Documents to Plaintiff to the extent that said request requires Plaintiff to respond by waiving her attorney/client privilege, or any other privilege, on the ground that said request exceeds the permissible scope of discovery under the Federal Rules of Civil Procedure.

E.

Subject to and without waiving the foregoing general objections, which all individually numbered Responses are subject to, Plaintiff responds and objects to the Defendant's Request for Production to Plaintiff as follows:

## Requests For Production Of Documents

### Request No. 1

All documents that you identified in your answers to the preceding interrogatories.

**Response to Request No. 1:**

*Any and all such relevant and responsive documents which are in the care, custody or control of the Plaintiff or Plaintiff's attorneys, will be produced at a mutually convenient time and location.*

### Request No. 2

All documents evidencing any communication between you and Auburn Aquatics Swim Program or any person or entity acting on its behalf at any time up to and including the present.

**Response to Request No. 2:**

*Any and all such relevant and responsive documents which are in the care, custody or control of the Plaintiff or Plaintiff's attorneys, will be produced at a mutually convenient time and location.*

### Request No. 3

All documents evidencing any communications between you and Auburn University or any person or entity acting on its behalf at any time up to and including the present.

**Response to Request No. 3:**

*Any and all such relevant and responsive documents which are in the care, custody or control of the Plaintiff or Plaintiff's attorneys, will be produced at a mutually convenient time and location.*

### Request No. 4

All documents evidencing any communication between you and any family member relating to the allegations contained in your Complaint.

**Response to Request No. 4:**

*Any and all such relevant and responsive documents which are in the care, custody or control of the Plaintiff or Plaintiff's attorneys, will be produced at a mutually convenient time and location.*

Request No. 5

All documents evidencing any communications between you and any witness to the events that are the subject to your Complaint.

**Response to Request No. 5:**

*Any and all such relevant and responsive documents which are in the care, custody or control of the Plaintiff or Plaintiff's attorneys, will be produced at a mutually convenient time and location.*

Request No. 6

All diaries, notes, tape recordings, photographs, videotapes or other documents made or kept by you concerning this case, your claims, Auburn Aquatics Swim Program and/or Auburn University.

**Response to Request No. 6:**

*A disc containing photographs has already been produced by Plaintiff. To the extent there are any other relevant and responsive documents which are in the care, custody or control of the Plaintiff or Plaintiff's attorneys, will be produced at a mutually convenient time and location.*

Request No. 7

All documents reflecting the identity of any doctor, therapist, chiropractor, psychiatrist, psychologist, minister or other counselor that you made an appointment with, consulted or received treatment from at any time from January 1, 1997 to the present.

**Response to Request No. 7:**

*The Plaintiff objects to this Request to the extent that it seeks Plaintiff to waive any privilege she may have by disclosure of such documents. Subject to and without waiving said objection, any and all such relevant and responsive documents which are in the care, custody or control of the Plaintiff or Plaintiff's attorneys, will be produced at a mutually convenient time and location.*

<u>Request No. 8</u>

All medical, psychiatric or psychological reports, writings, histories and charts, x-ray reports, prescriptions, bills and any other records or documents pertaining or referring in any way to any diagnosis, observation or treatment of you from January 1, 1997 to present.

**Response to Request No. 8:**

*Any and all such relevant and responsive documents which are in the care, custody or control of the Plaintiff or Plaintiff's attorneys, will be produced at a mutually convenient time and location.*

<u>Request No. 9</u>

All items or things that you were carrying or holding when you entered the James E. Martin Aquatics Center and/or at the time of the Incident.

**Response to Request No. 9:**

I was not holding or carrying any items at the time of the Incident. I may have had a purse over my shoulder (see response to Interrogatory Number 18.

RESPECTFULLY SUBMITTED this 28 day of November, 2007.

_____
ROBERT J. SOLOMON (ASB-9516-M51R)
Attorney for Plaintiff

**Of Counsel:**

KENNEY, SOLOMON & MEDINA, P.C.
3675 Crestwood Parkway, Suite 500
Duluth, Georgia 30096
(770) 564-1600

## CERTIFICATE OF SERVICE

This is to certify that I have this day served all parties through Counsel with a copy of the

within and foregoing *Plaintiff's Response to Defendant's First Set of Interrogatories* and

*Plaintiff's Response to Defendant's Request For Production* by placing a copy in the United

States Mail, First Class, with adequate postage thereon to ensure delivery addressed as follows:

Clark R. Hammond, Esq.<br>
W. Lee Elebash, Esq.<br>
Johnston, Barton, Proctor & Rose, LLP<br>
569 Brookwood Village, Suite 901<br>
Birmingham, AL  35209

This _____ day of November, 2007.

_____<br>
ROBERT J. SOLOMON (ASB-9516-M51R)<br>
Attorney for Plaintiff

**Of Counsel**

KENNEY, SOLOMON & MEDINA, P.C.<br>
3675 Crestwood Parkway, Suite 500<br>
Duluth, GA  30096<br>
770-564-1600



# EXHIBIT  D

# JohnstonBarton
### ATTORNEYS

W. Lee Elebash
Direct Dial: (205) 458-9483
Email: wle@johnstonbarton.com

January 10, 2008

VIA ELECTRONIC MAIL AND FACSIMILE
Robert J. Solomon
Thomas S. Kenney
Kenney, Solomon & Medina, P.C.
3675 Crestwood Parkway, Suite 500
Duluth, Georgia 30096

> **Re:** *Gertrude Ketre v. Auburn Aquatics Inc., et al.*
> **(Civil Action No. 3:07CV536-MEF in the United States District Court for the Middle District of Alabama)**

Dear Robert and Tom:

Thank you for the responses of your client to our client's interrogatories and requests for production. We have reviewed those responses and believe a number of them are incomplete. We would like for you to supplement them as follows:

Interrogatory 9: Please provide contact information for the individuals identified in your response. In accordance with the definitions section of our interrogatories, please include each individual's full name and current or last known residence address, current employer, and current business address. Additionally, please describe the substance of each person's knowledge about the facts that form the basis of the allegations contained in paragraph 9 of the Complaint.

Interrogatories 10, 11 and 12: Please describe each individual's knowledge about the facts that form the basis of the allegations contained in paragraphs 10, 11, and 12 of the Complaint.

Interrogatory 20: Please identify the individual(s) who took the photographs and provide the dates those photographs were taken.

Interrogatory 22: This interrogatory asks that you identify and *describe* every contact and communication between your client and Auburn University. Please describe each such contact or communication. Please note that in accordance with the definitions section of our interrogatories your response should identify and describe every contact or communication between Auburn University and your client and *"all persons, employees, agents, representatives, investigators, attorneys, or consultants acting on her behalf,"* which would include your firm.

January 10, 2008
Robert J. Solomon
Thomas S. Kenney
Page -2-

Interrogatory 23: We are entitled to know the amount of monetary damages claimed by your client. At this point, it does not appear that you have sufficient damages to maintain this case in federal court. Please provide us with the requested itemization of each and every category of damages that you claim, including in your answer a computation of such damages.

Please provide us with verified supplemental responses by January 23, 2008. We would request that you produce all documents responsive to our requests for production by the same date.

Finally, please provide us with some dates on which we can depose Gertrude Ketre, Rick Creed and Heidi Creed. We need to complete those depositions no later than February 22, 2008.

I look forward to hearing from you soon.

Sincerely,

Lee Elebash

WLE

cc:    Clark R. Hammond

EXHIBIT E

# FREEDOM COURT REPORTING

256

```
1    IN THE UNITED STATES DISTRICT COURT
        FOR THE MIDDLE DISTRICT OF ALABAMA
2                  EASTERN DIVISION
3
4      CASE NO.: 3:07-CV-536-MEF
5
6    GERTRUDE KETRE,

        Plaintiff,
7

8    vs.

9    AUBURN AQUATICS SWIM PROGRAM
     and HOMER KELLY,
10       Defendants.
11
12     DEPOSITION OF:  GERTRUDE KETRE
              VOLUME II
13             8:40 A.M.
            MAY 28, 2008
14
15
16   In accordance with Rule 5(d) of The Alabama
17   Rules of Civil Procedure, as Amended,
18   effective May 15, 1988, I, Cindy C. Jenkins,
19   am hereby delivering to Mr. W. Lee Elebash the
20   original transcript of the oral testimony
21   taken on the 28th day of May, 2008, along with
22   exhibits.
23
```

```
 1
 2
 3
 4
 5
 6          S T I P U L A T I O N S
 7             (continued)
 8
 9      IT IS FURTHER STIPULATED AND AGREED that it
10   shall not be necessary for any objections to
11   be made by counsel to any questions except as
12   to form or leading questions, and that counsel
13   for the parties may make objections and assign
14   grounds at the time of trial or at the time
15   said deposition is offered in evidence or
16   prior thereto.
17
18      IT IS FURTHER STIPULATED AND AGREED that
19   the notice of filing of the deposition is
20   waived.
21
22
23
```

255

```
 1
 2          S T I P U L A T I O N S
 3
 4      IT IS STIPULATED AND AGREED by and between
 5   the parties through their respective counsel
 6   that the deposition of Gertrude Ketre, a
 7   witness in the above-entitled cause may be
 8   taken before Cindy C. Jenkins, a Court
 9   Reporter and Notary Public for the State of
10   Alabama, at 3675 Crestwood Parkway, Suite 500,
11   Duluth, Georgia, on the 28th day of May, 2008,
12   commencing at 8:40 a.m., pursuant to the
13   Alabama Rules of Civil Procedure.
14
15
16      IT IS FURTHER STIPULATED AND AGREED that
17   the signature to and the reading of the
18   deposition by the witness is waived, the
19   deposition to have the same force and effect
20   as if full compliance had been had with all
21   laws and rules of court relating to the taking
22   of the depositions.
23
```

257

```
 1        A P P E A R A N C E S
 2
 3   Appearing On Behalf Of The Plaintiff:
        Kenney, Solomon, & Medina, P.C.
 3       Mr. Robert J. Solomon
 4       Mr. Thomas S. Kenney
         3675 Crestwood Parkway
 5       Suite 500
         Duluth, Georgia 30096
 6
 7   Appearing On Behalf Of The Defendants:
        Johnston, Barton, Proctor
 8         & Rose, LLP
        Mr. Clark R. Hammond
 9      Mr. W. Lee Elebash
        569 Brookwood Village
10      Suite 901
        Birmingham, Alabama 35209
11      205-458-9400
12
        Balch & Bingham
13      Mr. John G. Smith
        105 Tallapoosa Street
14      Montgomery, Alabama 36104
        334-269-3150
15
16   Reported By:
        Cindy C. Jenkins
17      Freedom Court Reporting
        367 Valley Avenue
18      Birmingham, Alabama 35209
19
20
21
22
23
```

1  (Pages 254 to 257)

## 367 VALLEY AVENUE
### (205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

# FREEDOM COURT REPORTING

322

1    A.  I don't remember.
2    Q.  Is nobody sending them to you
3  anymore?
4    A.  No.  I get the regular bills now.
5    Q.  We've talked about two different
6  bills you got, one of them for approximately
7  $1600 and another one for approximately $660?
8    A.  Yeah.
9    Q.  Are there any other bills that you
10  remember receiving related to this incident?
11    A.  I don't remember.
12    Q.  Okay.  Do you know if Heidi has
13  incurred any sort of expenses related to this
14  incident?
15    A.  No.  Ask Rick.  Rick is a doctor of
16  mathematics, so you can talk to him.  He can
17  answer questions better.  When I don't know
18  something, I sometimes ask Rick.  He knows
19  everything.
20    Q.  Okay.  What about prescription
21  costs, have you had any -- received any bills
22  for prescriptions?
23    A.  I pay myself.

323

1    Q.  Okay.  What are those prescriptions?
2    A.  Just like I told you yesterday,
3  Fioricet and Xanax.  And I hardly take them.
4  And that's just -- not much.  You get -- now
5  and then when I have a cold, I get an
6  antibiotic.  And, that, you get for $4.
7    Q.  Okay.  How much do you think you've
8  spent on prescription drugs that are related
9  to this incident?
10    A.  Oh, to this incident?
11    Q.  Yes, ma'am.
12    A.  To this accident, I cannot tell you.
13  I don't know.
14    Q.  Okay.  What about in the last year,
15  how much have you spent on prescription drugs?
16    A.  Prescription drugs, $25.  I only use
17  a prescription when I have a cold like I have
18  a bronchial infection, you know, just like you
19  get.
20    Q.  Sure.  Let me go back further.  Let
21  me go back since February of 2006 -- and I
22  don't expect an exact number here -- but
23  approximately how much do you think you've

324

1  spent on prescription drugs?
2    A.  I don't remember.  That's the truth.
3    Q.  Would it be more than $100?
4    A.  Could be.
5    Q.  Do you think it would be more than
6  $200?
7    A.  I don't remember.
8    Q.  Okay.  I'm just trying to get a
9  range.
10    A.  I don't want to tell you something I
11  don't remember.
12    Q.  And I don't want you to guess, but I
13  do want you to, if you can, give me a range.
14  Do you know if it was more or less than $500?
15    A.  I don't remember.  If I tell you
16  that, then -- I don't remember.
17    Q.  Okay.  Can you give me any range --
18      MR. SOLOMON:  Lee, she's answered
19  three times she doesn't know.
20      MR. ELEBASH:  No.  I've asked
21  specific questions about specific ranges.
22      MR. SOLOMON:  And her answer has
23  been three times I don't know.

325

1      MR. KENNEY:  Less or more than 500
2  covers a lot.
3      THE WITNESS:  I really don't know.
4      MR. ELEBASH:  Well, I'm going to ask
5  one final question.
6    Q.  Can you give me any range at all
7  about the amount you spent at all?
8    A.  No.  I don't want to deal with money
9  because I don't remember.
10    Q.  Okay.  All right.  Have there been
11  any other sort of expenses that you've
12  incurred related to this incident?
13    A.  Oh.  I lost a job.  I don't get
14  around.  I lost my job.  And I started just to
15  do real good in this new -- where I live now.
16      MR. HAMMOND:  Let me ask this
17  question to shortcut this:  I assume we can
18  get a list or printout or something of the
19  prescription drugs that she's claiming would
20  be reimbursable in this case?
21      MR. SMITH:  And I would say the same
22  thing.
23      MR. KENNEY:  We will -- absolutely.

18  (Pages 322 to 325)

## 367 VALLEY AVENUE
## (205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

# FREEDOM COURT REPORTING

| 326 |
|---|
| 1   We will get that for you, and we will itemize |
| 2   both the medical expenses paid by insurance |
| 3   and those paid out of pocket and separate |
| 4   them. |
| 5       MR. HAMMOND: All right. Why don't |
| 6   we just do that? |
| 7       THE WITNESS: Because I'm no good |
| 8   with money. |
| 9       MR. HAMMOND: I understand. Why |
| 10   don't we just go ahead and skip that? |
| 11    Q. (By Mr. Elebash) Do you think -- is |
| 12   that what this lawsuit is about, you'd like |
| 13   for someone to pay for those expenses? |
| 14    A. No. I have no more job. I have -- |
| 15   I go to bed with pain. I get up with pain. |
| 16    Q. Okay. Do you want someone -- do you |
| 17   think that someone should give you a certain |
| 18   amount of money because of the pain? |
| 19    A. I don't know. I have never been in |
| 20   court, and I have never dealt with lawyers. |
| 21    Q. Is there a certain amount of money |
| 22   that would make you happy to have or you think |
| 23   is reasonable? |

| 327 |
|---|
| 1    A. I could not tell. |
| 2    Q. Okay. |
| 3    A. That's why I have a lawyer for. |
| 4       MR. ELEBASH: Okay. That's all. |
| 5       MR. SOLOMON: He's through. Now, |
| 6   this gentleman is going to have a few more |
| 7   questions for you. |
| 8       MR. SMITH: I'm going to come down |
| 9   here. |
| 10 |
| 11   EXAMINATION BY MR. SMITH: |
| 12    Q. Ms. Ketre, I'm John Smith. I |
| 13   represent Homer Kelly in this lawsuit. |
| 14    A. Who is that? |
| 15    Q. Well, that was what I was going to |
| 16   ask you. Do you know who Homer Kelly is? |
| 17    A. No, I never heard of it. |
| 18    Q. Do you know why you sued Homer Kelly |
| 19   in this lawsuit? |
| 20    A. I don't remember. |
| 21    Q. Okay. And I think you've answered |
| 22   this, but I want to make sure. Have you ever |
| 23   seen Homer Kelly in your life? |

| 328 |
|---|
| 1    A. I don't remember a Homer Kelly. |
| 2    Q. Has anybody other than your lawyers |
| 3   ever discussed Homer -- |
| 4    A. Say that again, the first word. |
| 5    Q. Yes, ma'am. You've talked with your |
| 6   lawyers about a lot of things in this case, |
| 7   and it's not right -- |
| 8    A. Those are my lawyers. |
| 9    Q. Yes, ma'am. It's not right, and I |
| 10   can't ask you about what you and your lawyers |
| 11   have talked about, so this question I'm asking |
| 12   you now, I don't want you to tell me anything |
| 13   you and your lawyers have talked about, okay? |
| 14    A. Thank you. |
| 15    Q. Okay. Now, other than your lawyers, |
| 16   though, have you talked with anybody about |
| 17   Homer Kelly? |
| 18    A. I have never heard Homer Kelly. I |
| 19   have never seen Homer Kelly. I do not know |
| 20   who is Homer Kelly. |
| 21    Q. Okay. Can you tell me as you sit |
| 22   here anything that Homer Kelly did wrong that |
| 23   caused you to sue him? |

| 329 |
|---|
| 1    A. I do not know Homer Kelly. |
| 2    Q. So, is your answer to my question, |
| 3   no, you can't tell me anything? |
| 4    A. I cannot tell you. |
| 5    Q. That's fine. That's fine. |
| 6       Has anybody other than your lawyers |
| 7   told you that Homer Kelly did something wrong |
| 8   that's caused you to sue him? |
| 9    A. No, I don't know. |
| 10    Q. Okay. Do you know what role, if |
| 11   any, Homer Kelly may have had with the swim |
| 12   meet when you fell? |
| 13    A. No. |
| 14    Q. Do you know what role, if any, Homer |
| 15   Kelly had with the Martin Aquatics Center |
| 16   which was the place where you fell? |
| 17    A. Yeah, I know where I fell. |
| 18    Q. Yes, ma'am. Do you know what Homer |
| 19   Kelly did there? |
| 20    A. No. |
| 21    Q. Okay. Do you know if Homer Kelly |
| 22   had anything to do with the maintenance of the |
| 23   blue mat or the rug that you referred to? |

19 (Pages 326 to 329)

## 367 VALLEY AVENUE
## (205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

EXHIBIT  F

# JohnstonBarton
### ATTORNEYS

W. Lee Elebash
Direct Dial: (205) 458-9483
Email: wle@johnstonbarton.com

July 11, 2008

**VIA FACSIMILE AND U.S. MAIL**
Robert J. Solomon
Thomas S. Kenney
Kenney, Solomon & Medina, P.C.
3675 Crestwood Parkway, Suite 300
Duluth, Georgia 30096

> Re: *Gertrude Ketre v. Auburn Aquatics Inc., et al.*
> **(Civil Action No. 3:07CV536-MEF in the United States District Court for the Middle District of Alabama)**

Dear Robert and Tom:

We still have not received supplemental discovery responses that include an itemized list of the past and future medical expenses your client claims as damages in this case. My understanding was that you would be providing that information by the end of June. Please provide us with that information as soon as possible and no later than July 18, 2008.

Sincerely,

W. Lee Elebash

WLE

cc:     John G. Smith (via facsimile)
        Clark R. Hammond

{W0652628.1}

Johnston Barton Proctor & Rose LLP
Colonial Brookwood Center
569 Brookwood Village, Suite 901     Birmingham, Alabama 35209
T: 205.458.9400     F: 205.458.9500     www.johnstonbarton.com

# JohnstonBarton
### ATTORNEYS

W. Lee Elebash
Direct Dial: (205) 458-9483
Email: wle@johnstonbarton.com

July 28, 2008

VIA FACSIMILE AND U. S. MAIL
Robert J. Solomon
Thomas S. Kenney
Kenney, Solomon & Medina, P.C.
3675 Crestwood Parkway, Suite 300
Duluth, Georgia 30096

> **Re:** *Gertrude Ketre v. Auburn Aquatics Swim Program, et al.*
> **(Civil Action No. 3:07CV536-MEF in the United States District Court
> for the Middle District of Alabama)**

Dear Robert and Tom:

We still have not received a response to my July 11, 2008 letter regarding our request for supplemental discovery responses that include an itemized list of the past and future medical expenses your client claims as damages in this case. Please provide us with that information by Friday, August 1, so that we can avoid burdening the Court with a motion to compel.

Please also provide us with a copy of the videotape identified by Heidi Creed during her deposition (see Heidi Creed Deposition Transcript, pages 176 – 177). We would request that this information also be provided by August 1, 2008.

Sincerely,

W. Lee Elebash

WLE/bsm

cc:     John G. Smith (via facsimile)
        Clark R. Hammond

W0655250.DOC

# EXHIBIT G



**KENNEY, SOLOMON & MEDINA, P.C.**
ATTORNEYS AT LAW

TELEPHONE: (770) 564-1600
TELECOPIER: (770) 717-0595
www.ksmlawyer.com

August 1, 2008

Via e-mail  wle@johnsonbarton.com
and First Class U.S. Mail

Lee Elebash, Esq.
Johnston Barton Proctor & Rose, LLP
Colonial Brookwood Center
569 Brookwood Villages, Suite 901
Birmingham, AL  35209

> Re:   Gertrude Ketre v. Auburn Aquatics Swim Program and
>         Homer Kelly
>         U.S. District Court
>         Middle District of Alabama, Eastern Division
>         Civil Action File No. 3:07-CV-536-MEF
>         Our File No. 1852.0001

Dear Lee:

This is in response to your recent correspondence requesting an "itemized list of the past and future medical expenses" with respect to our client's injuries.

We have already provided you all of the medical records and the associated bills and invoices with the medical treatment of Ms. Ketre. Furthermore, it is my understanding that you have obtained all of this information directly from the healthcare providers.  Obviously, the best evidence of these past medical expenses are the specific medical bills and the detailed description of services provided with respect to such invoices.

Perhaps I do not understand the nature of your request in this matter. Nonetheless, it appears that we have already provided all of the information that you now claim must be produced by August 1, 2008.

On a related note, you have not provided any follow-up to the subpoena served upon Clark with respect to Southeastern Swimming. Based upon your telephone conversation with Tom Kenney, it is my understanding that you believe that Clark "overlooked" the subpoena and that you would respond to us about it. If there is no intent to respond to the subpoena, we will take action to enforce the subpoena with the Court.

Lee Elebash
August 1, 2008
Page -2-


Finally, you have requested a copy of the video tape identified by Heidi Creed in her deposition.  I do not believe we have a copy of this video tape but will have our client provide it to us and make a copy available to you as soon as possible.

Thank you for your attention to this matter.

Sincerely,

KENNEY SOLOMON & MEDINA, P.C.


Robert J. Solomon

# EXHIBIT  H

# FREEDOM COURT REPORTING

**1**

1    IN THE UNITED STATES DISTRICT COURT
     FOR THE MIDDLE DISTRICT OF ALABAMA
2              EASTERN DIVISION
3
4    CASE NO.: 3:07-CV-536-MEF
5
     GERTRUDE KETRE,
6
         Plaintiff,
7
     vs.
8
     AUBURN AQUATICS SWIM PROGRAM
9    and HOMER KELLY,
10       Defendants.
11
12   DEPOSITION OF: HEIDI CREED
              2:15 P.M.
           MAY 28, 2008
14
15   In accordance with Rule 5(d) of The Alabama
16   Rules of Civil Procedure, as Amended,
17   effective May 15, 1988, I, Cindy C. Jenkins,
18   am hereby delivering to Mr. W. Lee Elebash the
19   original transcript of the oral testimony
20   taken on the 28th day of May, 2008, along with
21   exhibits.
22
23

**2**

1            STIPULATIONS
2
3    IT IS STIPULATED AND AGREED by and between
4    the parties through their respective counsel
5    that the deposition of Heidi Creed, a witness
6    in the above-entitled cause may be taken
7    before Cindy C. Jenkins, a Court Reporter and
8    Notary Public for the State of Alabama, at
9    3675 Crestwood Parkway, Suite 500, Duluth,
10   Georgia, on the 28th day of May, 2008,
11   commencing at 2:15 p.m., pursuant to the
12   Alabama Rules of Civil Procedure.
13
14
15   IT IS FURTHER STIPULATED AND AGREED that
16   the signature to and the reading of the
17   deposition by the witness is waived, the
18   deposition to have the same force and effect
19   as if full compliance had been had with all
20   laws and rules of court relating to the taking
21   of the depositions.
22
23

**3**

1
2
3
4
5            STIPULATIONS
6            (continued)
7
8    IT IS FURTHER STIPULATED AND AGREED that it
9    shall not be necessary for any objections to
10   be made by counsel to any questions except as
11   to form or leading questions, and that counsel
12   for the parties may make objections and assign
13   grounds at the time of trial or at the time
14   said deposition is offered in evidence or
15   prior thereto.
16
17   IT IS FURTHER STIPULATED AND AGREED that
18   the notice of filing of the deposition is
19   waived.
20
21
22
23

**4**

1            APPEARANCES
2
Appearing On Behalf Of The Plaintiff:
3    Kenney, Solomon, & Medina, P.C.
     Mr. Robert J. Solomon
4    Mr. Thomas S. Kenney
     3675 Crestwood Parkway
5    Suite 500
     Duluth, Georgia 30096
6
7    Appearing On Behalf Of The Defendants:
     Johnston, Barton, Proctor
8    & Rose, LLP
     Mr. Clark R. Hammond
9    Mr. W. Lee Elebash
     569 Brookwood Village
10   Suite 901
     Birmingham, Alabama 35209
11   205-458-9400
12
     Balch & Bingham
13   Mr. John G. Smith
     105 Tallapoosa Street
14   Montgomery, Alabama 36104
     334-269-3150
15
16   Reported By:
     Cindy C. Jenkins
17   Freedom Court Reporting
     367 Valley Avenue
18   Birmingham, Alabama 35209
19
20
21
22
23

1 (Pages 1 to 4)

# FREEDOM COURT REPORTING

173

1  steps before she fell?
2      A.  Yes, I was aware.
3      Q.  Did you warn her about the fact that
4  there was this blue mat at the top of it?
5      A.  I didn't know it existed.
6      Q.  All right.  Okay.
7          Did you ever make a complaint to
8  anybody at Auburn University about the mat
9  being on these stairs?
10     A.  I can't recall.  I could have, but I
11 cannot recall.
12     Q.  Now, your complaint about this mat
13 was that it's plastic and when plastic gets
14 wet, it becomes slippery; is that right?
15     A.  Well, I just -- I just didn't
16 understand why they use that type of mat
17 around a stairway.  But I don't -- you know,
18 who am I?  I'm just -- you know, like I -- you
19 know, the questions were asked me.  I've never
20 designed that mat.  I've never done research.
21 I -- you know.
22     Q.  And, of course, you've seen that
23 mat, if I've understood you right, in locker

174

1  rooms; is that right?
2      A.  That's the only place I've seen it.
3      Q.  And swimmers are going in those
4  lockers rooms all the time; right?
5      A.  Right.  And I've never -- and,
6  again, I've never thought it was a great thing
7  for being even in locker rooms, but water
8  repels down underneath it, so --
9      Q.  And, actually, that's a safer
10 condition with the water draining through it
11 than walking on -- directly walking on a wet
12 floor, isn't it?
13     A.  Correct.
14     Q.  Do you know -- and, again, my
15 apologies if I've asked you this or you've
16 been asked earlier.
17     A.  Sure.
18     Q.  I'm just having to jump around
19 through notes.  Do you know how long the mat
20 had been extended over the lip of the step
21 when your mother fell?
22     A.  I don't know to be exact.
23     Q.  Did I understand you to say that the

175

1  leg that your mother injured is shorter than
2  the other leg now?
3      A.  Yes.
4      Q.  Has she ever gone to any sort of
5  physician to be fitted for an orthopedic
6  device?
7      A.  Yeah, the sports therapist that she
8  sees, and she has been fitted.
9      Q.  Have they given her a built-up shoe?
10     A.  Yes.
11     Q.  Does she still wear the same shoes
12 she did at the time she fell?
13     A.  I don't think so, no.
14     Q.  She was wearing --
15     A.  Same style of shoe maybe.
16     Q.  Okay.
17     A.  Same style of shoe.  She seems to
18 like that brand.
19     Q.  That Reebok brand?
20     A.  Yes.
21     Q.  Does she wear a built-up shoe
22 regularly now?
23     A.  I believe so.

176

1      Q.  Okay.  I mean, that's what the
2  orthopedic person prescribed for her?
3      A.  Right.
4      Q.  Or told her --
5      A.  I think it helps her because then
6  she doesn't walk with a limp if she wears
7  that.
8      Q.  And that helps her balance too,
9  doesn't it?
10     A.  Correct.
11     Q.  Okay.  Did you try to move the mat
12 after your mother fell?
13     A.  I don't recall at that -- during
14 that day.
15     Q.  That day or at any time, did you
16 take any photographs of that mat?
17     A.  Yes, I have.
18     Q.  All right.  You've taken photographs
19 of it.  And when did you take photographs of
20 the mat?
21     A.  Actually not photographs, but I
22 videotaped it.
23     Q.  You videotaped it.  When was that?

44  (Pages 173 to 176)

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

# FREEDOM COURT REPORTING

|  | 177 |
|---|---|
| 1 | A.    A few months afterwards. |
| 2 | Q.    Would that have been when you were |
| 3 | back in the summertime? |
| 4 | A.    I think so. |
| 5 | Q.    Do you still have that videotape? |
| 6 | A.    No, I don't have it. |
| 7 | Q.    Why did you videotape it? |
| 8 | A.    Because I wanted my lawyer to see |
| 9 | that it was -- my mother's lawyer to see that |
| 10 | it was -- |
| 11 | Q.    Did your mother's lawyer instruct |
| 12 | you to take that videotape? |
| 13 | A.    No. |
| 14 | Q.    That's a decision you made on your |
| 15 | own? |
| 16 | A.    Yes, sir. |
| 17 | Q.    And why don't you have that |
| 18 | videotape anymore? |
| 19 | A.    Because I gave it to my mother's |
| 20 | lawyer. |
| 21 | Q.    And, so, if I've understood the time |
| 22 | sequence correctly, from the time your mother |
| 23 | fell in February until you were back in the |

|  | 178 |
|---|---|
| 1 | fall -- |
| 2 | A.    It could have been the summer, |
| 3 | though. |
| 4 | Q.    Well, some period of months |
| 5 | passed -- |
| 6 | A.    Yeah. |
| 7 | Q.    -- and then the mat was taken away |
| 8 | and carpet was put in its place; correct? |
| 9 | A.    Correct. |
| 10 | Q.    Okay.  When you have worked in USA |
| 11 | Swimming meets, USA Swimming doesn't own any |
| 12 | facilities, does it, at least in your |
| 13 | experience? |
| 14 | A.    Right. |
| 15 | Q.    All right.  USA Swimming will rent |
| 16 | or lease or have some sort of agreement with |
| 17 | the owner of the premises to use the premises; |
| 18 | is that right? |
| 19 | A.    Yes. |
| 20 | Q.    In your experience, who's typically |
| 21 | in charge of seeing that the right people get |
| 22 | on the deck or don't get on the deck?  Is it |
| 23 | the owner of the premises -- |

|  | 179 |
|---|---|
| 1 | A.    I think it's the -- |
| 2 | Q.    -- or USA Swimming? |
| 3 | A.    -- whoever is sponsoring the meet, I |
| 4 | would believe. |
| 5 | Q.    Okay.  Was your family in a hurry on |
| 6 | the day that your mother fell? |
| 7 | A.    No.  We arrived at a decent time. |
| 8 | Q.    What time was the meet scheduled to |
| 9 | start? |
| 10 | A.    I believe 6:00 o'clock. |
| 11 | Q.    Okay. |
| 12 | A.    I think warm-up was at 5:00.  I |
| 13 | think we arrived around 5:00.  But, again, I |
| 14 | could be messing up the hours a little bit.  I |
| 15 | just know we were not in any hurry. |
| 16 | Q.    Did you know your mother's lawyers |
| 17 | before this lawsuit? |
| 18 | A.    No. |
| 19 | Q.    Did you know your mother's lawyers |
| 20 | before she fell? |
| 21 | A.    No, just the daughter. |
| 22 | Q.    She swims with -- |
| 23 | A.    Yes. |

|  | 180 |
|---|---|
| 1 | Q.    Who does she swim with? |
| 2 | A.    Swim Atlanta. |
| 3 | Q.    Okay.  Do you know how your mother |
| 4 | came to choose her lawyers? |
| 5 | A.    Not really.  I mean, not exactly. |
| 6 | Q.    I know your mother worked at Smoke |
| 7 | Rise Baptist Church in their taking care of |
| 8 | babies for many years.  Do you think that she |
| 9 | could do that today? |
| 10 | A.    I know she would like to, but I |
| 11 | don't know if she can. |
| 12 | Q.    All right.  Has she tried? |
| 13 | A.    Not since the hip, no. |
| 14 | Q.    Do you know of anything that would |
| 15 | prevent -- physically anything that would |
| 16 | prevent her from doing the job that she did |
| 17 | before she fell? |
| 18 | A.    And doing it now? |
| 19 | Q.    Yes, ma'am. |
| 20 | A.    Just I would be concerned about her |
| 21 | lifting a baby and having balance. |
| 22 | Q.    Okay.  It's not so much — I mean, |
| 23 | her upper body, in your view, is physically |

45 (Pages 177 to 180)